IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Devin Jamaal Kershaw, #285275, ) | |
| ) | Civil Action No. 6:10-951-MBS-KFM |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Anthony J. Padula; Jon Ozmint; Bruce ) | |
| Oberman; L. Greer; Robert Johnson; ) | |
| B. Durant; L. Epps; Michelle Miller, ) | |
| ) | |
| Defendants. ) | |
| ) | |

This matter is before the court on the defendants' motion for summary judgment (doc. 51). The plaintiff, who is a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983. The plaintiff claims that since November 2007 the defendants have subjected him to harassment, threats, and retaliation for refusing to cooperate in the defendants' investigation of a former corrections officer at Lee Correctional Institution.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., all pretrial matters in cases filed under Title 42, United States Code, Section 1983, are referred to a United States Magistrate Judge for consideration.

On November 1, 2010, the defendants filed a motion for summary judgment. On November 2, 2010, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment procedure and the possible consequences if he failed to respond adequately. On January 3, 2011, the plaintiff filed his opposition to the motion for summary judgment.

**FACTS PRESENTED**

The plaintiff is currently incarcerated at Lee Correctional Institution ("LCI") in Lee County, South Carolina and was incarcerated at LCI at all times relevant to the issues in this case. Defendant Padula is the Warden at LCI; defendant Ozmint is the Director of the South Carolina Department of Corrections ("SCDC"); defendant Oberman is the Supervisor of the Special Management Unit ("SMU") at LCI; defendant Greer is the institutional investigator at LCI; defendants Johnson, Durant, and Epps were all corrections officers at LCI at all times relevant; and defendant Miller was an institutional grievance coordinator at all times relevant.

The plaintiff's complaint contains numerous general allegations regarding his dissatisfaction with the way he has been treated by various administrators and security staff at LCI. He alleges that he has been placed in SMU because of his refusal to assist with a criminal investigation of a former corrections officer, that he has been the subject of multiple improper searches and seizures, that he has been harassed because of his religious affiliation, that his family members have been harassed, that LCI administration has failed to comply with SCDC policies, and that his grievances have not been processed in a timely manner. The plaintiff alleges that the conduct of the numerous defendants has caused him to suffer mental anguish and distress. His complaint further alleges that he has developed a life-threatening heart condition as a result of the way he has been treated while incarcerated. The plaintiff's complaint states a prayer for compensatory damages in the amount of $350,000 against each defendant, punitive damages in the amount of $300,000 against each defendant, $250,000 for each tort claim act violation, and that the court order that defendant Johnson be terminated.

Specifically, the plaintiff alleges that his cell was "shaken down" on November 9, 2007, and photographs of a former corrections officer were confiscated from his cell. He claims that when he refused to tell how he got the photographs, he was placed

in SMU for seven months (comp. at 3). He claims that his cell was searched again on November 3, 2008, and mail from his family was taken by contraband officers. The plaintiff alleges that two days later defendant Durant gave him his property back along with a letter from defendant Johnson that contained Bible verses and the message "Think on these things" (comp. at 5, ex. A). The plaintiff claims that the verses reference death, God's wrath, and the consequences for one's actions. He claims this violates his First, Eighth, and Fourteenth Amendment rights because defendant Johnson knew he is not a Christian but is of the Nation of Islam faith (comp. at 6). The plaintiff alleges that he was placed in SMU on December 10, 2008, because he is classified as a member of a security threat group ("STG"). He claims his mail was censored from December 10, 2008, to April 28, 2009 (comp. at 7). The plaintiff alleges his cell was searched again on December 29, 2008, and defendant Epps spat on his mattress before leaving his cell (comp. at 6).

The plaintiff further claims that in January 2009 he began experiencing "mental anguish" because of the threats of staff and that he began "seeing things such as bells and caskets" (comp. at 7). He alleges that defendant Greer told him that the real reason he was placed in SMU was because the plaintiff was under investigation because of his relationship with the former corrections officer (comp. at 8). The plaintiff further claims that in April 2009 he was present during a conversation between his mental health counselor and defendant Oberman, who acknowledged that a transfer would be in the plaintiff's best interests. However, defendant Greer stated that there would be no transfer unless the plaintiff gave him information (comp. at 9-10).

The plaintiff alleges that he was charged on July 8, 2009, with smuggling contraband (marijuana). He claims defendant Johnson called the plaintiff's mother and accused her of sending the contraband (comp. at 10). The plaintiff's mother went to the Sumter County Police Station and reported to an officer that defendant Johnson called her and stated that "he had some indication of contraband activity around her." She was

3

advised to complain to LCI (comp., ex. E). He claims that defendant Johnson took certain photographs out his cell in July 2009, stating that the photographs were contraband (comp. at 11).

The plaintiff alleges that he began experiencing headaches, chest pains, frequent vomiting, and blurred vision. He states that on October 23, 2009, he underwent an EKG which indicated a problem with his heart. He claims that defendant Johnson "harassed" him on December 1, 2009. On December 4, 2009, the plaintiff alleges that he had a panic attack and irregular heartbeat. He spent four days in the hospital and claims that he was diagnosed with a heart condition known as "prolonged Q.T." He claims the heart condition resulted from the stress caused by defendant Johnson's harassment (comp. at 13).

## **APPLICABLE LAW AND ANALYSIS**

Federal Rule of Civil Procedure 56 states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and

ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

### *Improper Search and Seizure*

The plaintiff alleges that his cell has been searched numerous times and that photographs of a former corrections officer were confiscated from his cell. The United States Constitution allows prison administrators "wide ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). Prison inmates are not entitled to constitutional protection against unreasonable searches and seizures of personal property. *Hudson v. Palmer,* 468 U.S. 517, 526 (1984).

An inmate does not have privacy rights in papers and effects in his cell. *Smith v. Chrans*, 629 F.Supp. 606, 610 (C.D. Ill. 1986).

In *Daniels v. Williams*, 474 U.S. 327, 332-36 (1986), the Supreme Court held that the Due Process Clause is not implicated when a state employee negligently deprives an individual of his property. In the case of an unauthorized intentional deprivation of property, no due process claim arises unless or until the state fails or refuses to provide a suitable post-deprivation remedy. *Hudson*, 468 U.S. at 533. The grievance process available to SCDC inmates complies with the requirements of due process and is thus such an adequate post-deprivation remedy. *Al-Shabazz v. State*, 527 S.E.2d 742, 753 (S.C. 2000). Additionally, in South Carolina, prisoners may bring an action for recovery of personal property against officials who deprive them of property without state authorization. *See McIntyre v. Portee*, 784 F.2d 566, 567 (4th Cir. 1986) (citing S.C. Code Ann. § 15-69-10 *et seq.*). Such an action provides "a post-deprivation remedy sufficient to satisfy due process requirements." *Id.* (citing *Parratt v. Taylor*, 451 U.S. 527 (1981)).

Here, the plaintiff appears to claim that the defendants intentionally deprived him of property by confiscating mail and photographs from his personal property. The plaintiff submitted at least one formal grievance regarding the searches and property confiscation, and his grievance was denied. Therefore, as argued by the defendants, the plaintiff's due process rights have been satisfied, and any claim relating to the alleged improper searches and seizures must fail.

### *Retaliation*

Retaliation against an inmate for the exercise of a constitutional right may state a claim. *Hudspeth v. Figgins,* 584 F.2d 1345, 1348 (4th Cir. 1978). Retaliation by an official is actionable even if the act would have been proper if taken for different reasons. *ACLU of Md., Inc. v. Wicomico County*, 999 F.2d 780, 785 (4th Cir. 1993). In order to state a retaliation claim, the plaintiff "must allege either that the retaliatory act was taken in

response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Thereafter, the inmate must also demonstrate that he suffered some adverse impact or actual injury. *Wicomico County*, 999 F.2d at 785-86 (citing *Huang v. Bd. of Governors of Univ. of N.C.*, 902 F.2d 1134, 1140 (4th Cir. 1990)). A plaintiff must provide facts that show the exercise of his constitutional right was a substantial factor motivating the retaliation. *See, e.g., Cochran v. Morris*, 73 F.3d 1310, 1318 (4th Cir. 1996). Further, the plaintiff must allege specific facts supporting his claim of retaliation; bare assertions of retaliation do not establish a claim of constitutional dimension. *Id.* Conclusory allegations of retaliation are insufficient to support his claim or establish the necessary element of adversity. *Id.* Moreover, claims of retaliation are treated with skepticism in the prison context. *Cochran*, 73 F.3d at 1317.

In this case, the plaintiff alleges that defendants Greer, Johnson, Epps, and Durant engaged in retaliatory conduct against him because of his lack of cooperation with a criminal investigation of a former corrections officer being conducted by defendant Greer. However, the conduct alleged by the plaintiff, even if true, does not rise to the level of deprivation of constitutional rights. The plaintiff has not alleged that he was physically injured by any of the defendants. While he claims he has suffered mental anguish and now has a heart condition, he has offered no legitimate evidence of any causal relationship between his alleged mental issues and/or heart condition and the conduct of these defendants. Furthermore, the plaintiff's allegations that being provided references to Bible verses or non-specific passing comments made by corrections officers constitute threats of physical harm are simply insufficient to establish unconstitutional conduct, and the plaintiff has offered no evidence to suggest that he has in fact suffered any injury as a result of the alleged conduct of defendants. Therefore, any claims of unconstitutional retaliatory conduct should be dismissed.

***Mail***

Next, the plaintiff alleges that mail was removed from his cell and inspected outside his presence. As discussed above, in the case of an unauthorized intentional deprivation of property, no due process claim arises unless or until the state fails or refuses to provide a suitable post-deprivation remedy. *Hudson*, 468 U.S. at 533. The grievance process available to SCDC inmates complies with the requirements of due process and is thus such an adequate post-deprivation remedy. *Al-Shabazz*, 527 S.E. 2d 742. Additionally, in South Carolina, prisoners may bring an action for recovery of personal property against officials who deprive them of property without state authorization. *See McIntyre*, 784 F.2d at 567 (citing S.C. Code Ann. § 15-69-10 *et seq.*). Such an action provides "a post-deprivation remedy sufficient to satisfy due process requirements." *Id.* (citing *Parratt*, 451 U.S. 527).

Furthermore, the mere opening of an inmate's incoming personal mail in his absence does not raise a claim of constitutional magnitude. *See Sterling-Earl v. Gray*, C.A. No. 7:06cv00196, 2006 WL 1318367, at **6-7 (W.D. Va. 2006). However, different standards apply regarding the inspection of personal versus legal mail. *Altizer v. Deeds*, 191 F.3d 540, 548-49, n. 14 (4th Cir. 1999). Here, the plaintiff alleges that his "mail from friends and family were kept by the dozens" (comp. at 7). The plaintiff has not alleged nor shown that the defendants opened or otherwise mishandled his legal mail. In order to be classified as legal mail, the legal sender must be specifically identified and the mail must be marked confidential. If such mail is not so marked, it may be opened outside an inmate's presence. *United States v. Stotts*, 925 F.2d 83, 88-90 (4th Cir.1991).

The plaintiff's claims related to the handling of his mail or inspection of his personal property in this case do not rise to the level of constitutional violations as they do not demonstrate an interference with an attorney/client privilege or his ability to communicate with a court, nor do they create a material issue of fact regarding any allegation of injury sustained by the plaintiff. Furthermore, the legitimate penological interest

8

of maintaining a secure correctional institution significantly outweighs any perceived harm caused to the plaintiff as a result of having his mail and other personal property inspected. Accordingly, the defendants are entitled to summary judgment on this issue.

### *Classification*

The plaintiff further alleges that his constitutional rights have been violated because he has repeatedly been placed in the SMU, and he was not transferred to another prison upon his request. Federal courts are required to accord great consideration to a correctional system's need to maintain order, discipline, and control. *Wolff v. McDonnell*, 418 U.S. 539, 558-62 (1974). Furthermore, there is no constitutional right for a state prisoner or federal prisoner to be housed in a particular institution, at a particular custody level, or in a particular portion or unit of a correctional institution. *See Olim v. Wakinekona*, 461 U.S. 238, 245-46 (1983). Thus, the placement and assignment of inmates to particular institutions or units by state or federal corrections departments are discretionary functions, and are not subject to review unless state or federal law places limitations on official discretion. *Hayes v. Thompson*, 726 F.2d 1015, 1016-1017 & n.1 (4th Cir. 1984) (collecting cases).

It is well settled in this judicial district that no existing state or federal laws confer any protected liberty interests upon inmates from being classified or placed in administrative segregation within a particular prison or in a particular section of a prison. *See, e.g., Keeler v. Pea*, 782 F.Supp. 42, 44 (D.S.C.1992) (citing *Meachum v. Fano*, 427 U.S. 215 (1976)); *Montanye v. Haymes*, 427 U.S. 236, 242 (1976) (If a prisoner's confinement is within terms of the sentence imposed upon him and does not violate other constitutional provisions, "the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight.").

Furthermore, in *Sandin v. Conner*, 515 U.S. 472 (1995), the United States Supreme Court held that a change in the condition of a prisoner's confinement that does not

exceed the scope of the original sentence gives rise to a federally-protected liberty interest only if it "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. In *Sandin*, the Court concluded that the plaintiff's "segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." *Id.* at 485.

The plaintiff's claims regarding his custody classification and prison assignment fail to rise to the level of a constitutional violation. Furthermore, the plaintiff has failed to offer anything other than conclusory allegations that his placement in the SMU was in retaliation for his refusal to cooperate in the investigation of the former corrections officer or was in any way related to his religious affiliation.

***Conditions of Confinement***

The plaintiff alleges that the conditions of his confinement violate his constitutional rights. To succeed on any Eighth Amendment claim regarding conditions of confinement, a prisoner must prove: (1) objectively, the deprivation of a basic human need was sufficiently serious, and (2) subjectively, the prison officials acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). In order to demonstrate an extreme deprivation, an individual "must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *See Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993). Without such showing, a plaintiff must demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions. *See Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir. 1997) (citing *Helling v. McKinney*, 509 U.S. 25, 33-35 (1993)). The plaintiff has made no such showing.

In *In re Long Term Administrative Segregation of Inmates Designated as Five Percenters*, the Fourth Circuit Court of Appeals held that a group of inmates ordered to long-term segregated confinement did not violate their Eighth Amendment rights because

their alleged damages of depression and "great stress" causing them "great emotional and physical suffering" did not constitute the "extreme deprivation" required to make out a conditions-of-confinement claim. 174 F.3d 464, 471-72 (4th Cir. 1999). The inmates complained that they were confined to their cells for 23 hours per day without radio or television, that they receive only five hours of exercise per week, and that they may not participate in prison work, school, or study programs. *Id.* at 471.

Here, the plaintiff has failed to present any evidence of a serious physical or emotional injury resulting from the defendants' actions, much less evidence of conduct on behalf of any of the defendants that "shocks the conscience" or is deliberately indifferent to the plaintiff's serious medical or other needs. He merely alleges that he has been repeatedly placed in SMU and requested to provide information to a criminal investigation of a former LCI employee. He has failed to show any evidence linking his heart condition to the alleged harassment by the defendants. Based upon the foregoing, the plaintiff's allegations fail.

### *Grievances*

The plaintiff alleges that his constitutional rights were violated because the defendants failed to timely process and/or respond to his written staff requests and grievances. "The Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by the state." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.1994). Even assuming that defendants violated their own grievance procedures, such actions do not state a claim that is actionable under Section 1983. *See Brown v. Dodson*, 863 F.Supp. 284, 285 (W.D.Va.1994). Accordingly, this claim fails.

### *Respondeat Superior*

The plaintiff's complaint states general conclusory allegations that defendants Padula, Ozmint, and Oberman are supervisors and responsible for the actions of the

correctional officers at LCI. To the extent the plaintiff seeks to hold these defendants liable in their supervisory capacities, the doctrine of *respondeat superior* generally is inapplicable to Section 1983 suits. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978); *Vinnedge*, 550 F.2d at 928-29. In order to establish liability against a governmental entity, the plaintiff must allege and prove that some policy or custom of the entity was the "moving force" behind the violation. *Monell*, 436 U.S. at 694. The plaintiff makes conclusory allegations one or more of these defendants were aware of the issues and took no action. However, the plaintiff has failed to show evidence of wrongdoing by these defendants or any custom or policy leading to wrongdoing.

Furthermore, the plaintiff must establish three elements to hold a supervisor liable for a constitutional injury inflicted by a subordinate: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to people like the plaintiff; (2) the supervisor's response was so inadequate as to constitute deliberate indifference or tacit authorization of the subordinate's conduct; and (3) there is an "affirmative causal link" between the supervisor's inaction and the plaintiff's constitutional injury. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir.). The plaintiff has failed to make such a showing here. Based upon the foregoing, the claims against these defendants fail.

### *Standing*

The plaintiff claims that he was harmed because defendant Johnson called his mother and accused her of sending contraband to the plaintiff (comp. at 10; pl. resp. m.s.j. 14-15). However, the plaintiff has failed to show how such alleged contact constituted a violation of his personal constitutional rights or caused him to personally suffer injury. The plaintiff has no standing to pursue claims on behalf of others for alleged inappropriate conduct that did not involve him directly. *See County of Riverside v. McLaughlin*, 500 U.S. 44, 51 (1991) ("At the core of the standing doctrine is the requirement that a plaintiff 'allege

personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'") (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)). Accordingly, any such claim fails for lack of standing.

### *State Law Claims*

Having found that the defendants are entitled to summary judgment regarding the plaintiff's constitutional claims, it is recommended that the court decline to exercise supplemental jurisdiction over any claims for relief asserted pursuant to state law. *See* 28 U.S.C. § 1367(c).

### **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, this court recommends that the defendants' motion for summary judgment (doc. 51) be granted.

> s/Kevin F. McDonald
> United States Magistrate Judge

April 6, 2011

Greenville, South Carolina